MABEL BURKE HISER, as Administratrix, etc., of LAWRENCE R. HISER, Deceased, Respondent, *v.* JAMES C. DAVIS, Director-General of Railroads, as Agent under Section 206 of the Transportation Act, 1920,* Appellant.

First Department, May 5, 1922.

Railroads — action under Federal Employers' Liability Act for death of plaintiff's intestate — damages — recovery of $14,000 for benefit of infant child not excessive — intestate engaged in removing old smokestack on ferryhouse of defendant — boilers from which smokestack led used to heat ferryhouse and water for interstate ferryboats — intestate engaged in interstate commerce — husband and wife — marriage annulled on ground that former husband of wife was living — judgment properly amended to show that marriage was in good faith and that infant daughter of intestate was legitimate.

In an action under the Federal Employers' Liability Act to recover for the death of plaintiff's intestate, a verdict of $14,000 in favor of the infant child of the intestate was not excessive, where it appeared that at the time of the accident said intestate was a young man, twenty-three years of age, strong, in good health and of good habits; that he was earning $1,400 per year, and that his child, for whose benefit the recovery was had, was at the time of his death eight months of age.

The plaintiff's intestate was engaged in interstate commerce, where it appeared that he was employed by the Director-General of Railroads, operating the New York Central railroad, as one of a gang engaged in machinists' repair work and at the time of the accident was engaged in taking down an old smokestack on the defendant's ferryhouse at Forty-second street adjacent to the ferry running from that street in the city of New York, to Weehawken, N. J.; that the smokestack was being removed for the purpose of erecting a new one; that the boilers from which the smokestack led were used in heating the defendant's ferryhouse during the cold months and also in furnishing hot water to the ferryboats operated by the defendant; that plaintiff's intestate immediately before the accident was working on the roof of the building, but was called down to the main dock to do some work there in connection with lowering the smokestack and while so engaged was caught between the ferry and the dock and crushed by an incoming ferryboat.

Prior to the marriage of the plaintiff to the intestate, the plaintiff had been married to another who had deserted her. Before the plaintiff married the intestate she was advised by her former husband's brother and believed that her former husband was dead. Thereafter, and after her marriage to the intestate, her former husband returned and secured a decree of divorce. The intestate brought an action for the annulment of his marriage with the plaintiff and about five months before his death an interlocutory decree was entered annulling the marriage, but the decision contained no finding as to the good faith of the parties in contracting the marriage and the decree made no provision with respect to the legitimacy of the child based upon such good faith.

* See 41 U. S. Stat. at Large, 461, § 206; Pres. Proc. March 11, 1920, May 14, 1920, and March 26, 1921, 41 id. 1789, 1793, 1794, 42 id. ———.— [REP.

First Department, May, 1922.                     [Vol. 201

*Held,* that it was proper for the court after the death of plaintiff's intestate to
so amend the final judgment in the annulment action as to contain the adjudi-
cation that the said marriage was contracted by both parties in good faith and
that the said infant daughter was the legitimate child of both parties.

APPEAL by the defendant, James C. Davis, Director-General of
Railroads, etc., from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of Bronx
on the 11th day of June, 1921, upon the verdict of a jury for
$14,000, and also from an order entered in said clerk's office on
the 24th day of May, 1921, denying the defendant's motion for a
new trial made upon the minutes.

*Alex S. Lyman* [*William Mann* of counsel], for the appellant.

*Thomas J. O'Neill* of counsel [*Leonard F. Fish* with him on the
brief], for the respondent.

MERRELL, J.:

This action was brought by the administratrix of the estate of
Lawrence R. Hiser, deceased, to recover of the Director-General
of Railroads and the New York Central Railroad Company damages
for the death of plaintiff's intestate as the result of the defendant's
negligence.   On motion at the trial the complaint was dismissed as
against the New York Central Railroad Company and the sum-
mons and complaint were amended so as to substitute as sole party
defendant James C. Davis, Director-General of Railroads, as
designated agent under the Transportation Act of 1920.

The action was brought under the Federal Employers' Liability
Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291,
chap. 143), and the plaintiff recovered at the trial a verdict in the
sum of $14,000, as compensation to Lavinnie Ruth Hiser, the infant
child of the parties; and on this verdict judgment has been entered
in favor of the plaintiff and against the defendant Director-General
of Railroads designated agent aforesaid for the sum of $14,226.41.
The usual motion to set aside the verdict and for a new trial was
made and denied, and the appeal is also from the order denying
said motion.

The plaintiff alleges that at the time plaintiff's intestate was
killed, on October 2, 1919, said intestate was employed by the
defendant and was then engaged in interstate commerce.

Aside from the amount of the recovery, which the appellant
claims is excessive, only two questions are presented upon this
appeal: *First,* as to whether or not, at the time of his death,
plaintiff's intestate was engaged in interstate commerce within the
provisions of the Federal Employers' Liability Act; and, *second,*
whether or not the recovery, which was for the benefit of Lavinnie

Ruth Hiser, who was the child of the plaintiff and said intestate, can be upheld. I do not think the recovery of $14,000 in favor of the infant child of the intestate was excessive. At the time he was killed, as the result of the alleged negligence of the defendant, plaintiff's intestate was a young man, twenty-three years of age, a strong man, in good health, and of good habits. His child, for whose benefit the recovery was had, was, at the time of his death, eight months of age, and was entitled to be furnished by her father with an education and support until she became of age. The deceased was earning substantially $1,400 a year when he was killed. Under existing conditions, a recovery of $14,000 by the plaintiff for the infant child cannot be said to be excessive.

At the time of his death plaintiff's intestate was employed by the Director-General of Railroads, operating the New York Central railroad, as one of a gang engaged in machinists' repair work. At the time of the accident this gang was engaged in taking down an old smokestack on the defendant's ferryhouse at Forty-second street adjacent to the ferry running from that street, in the city of New York, to Weehawken, in the State of New Jersey. This smokestack was being removed for the purpose of erecting a new one in its place. The boilers from which the smokestack led were used in heating the defendant's ferryhouse during the cold months, and also in furnishing hot water to the ferryboats operated by the defendant. Plaintiff's intestate was working on the roof of the building, splicing a ginpole to be used in lowering the old smokestack. While engaged in such work he was called down to the main dock to work upon a snatchplug there, made necessary by the operation of lowering the smokestack, and while so engaged was caught between the ferry and the dock and crushed by an in-coming ferryboat. No warning whatever was given the deceased of the approach of said boat. No question is raised but that the death of plaintiff's intestate was the result of defendant's negligence, nor is any claim made that the intestate was at the time guilty of contributory negligence, nor that he was killed as the result of any assumed risk.

As to the first ground on which appellant seeks reversal, I think the evidence shows conclusively that at the time of the accident the plaintiff's intestate was engaged in interstate commerce within the decisions upon that subject. There can be no question that the building upon which the plaintiff's intestate was working and the smokestack which was being taken down were all a part of the plant of the defendant and necessary for its use while engaged in interstate commerce. It was a necessary part of the defendant's equipment, and plaintiff's intestate was engaged in repairing such

equipment. That plaintiff's intestate was, at the time he was killed, engaged in interstate commerce is sustained by the more recent decisions of the Federal courts upon the subject, and while some of the earlier Federal cases and some of the decisions of our State courts are not in entire harmony with the later Federal decisions, I am of the opinion that the law, as finally settled, supports the contention of the respondent. While the decisions of our State courts may not be in entire harmony with the Federal decisions, this action having been brought under the Federal Employers' Liability Act, the decisions of the Federal courts should prevail.

The latest decisions upon the subject to which our attention has been directed are *Pedersen* v. *D., L. & W. R. R.* (229 U. S. 146); *Roush* v. *Baltimore & O. R. Co.* (243 Fed. Rep. 712); *Philadelphia, Baltimore & Washington R. R. Co.* v. *Smith* (250 U. S. 101); *Erie R. R. Co.* v. *Collins* (253 id. 77), and *Erie R. R. Co.* v. *Szary* (Id. 86).

In the *Pedersen Case* (*supra*) the United States Supreme Court held that a railroad employee carrying bolts to be used in repairing a bridge used by the defendant in connection with the operation of its trains engaged in interstate commerce, and who was injured by an interstate train, was entitled to sue under the Federal Employers' Liability Act.

In the *Roush Case* (*supra*) the defendant was engaged in operating a system of steam railroads upon which interstate traffic was carried on, and it appeared that one of its lines ran from the city of Pittsburgh, Penn., to the city of Chicago, Ill., through Warwick, Wayne county, O.; that in connection with said line the defendant owned and operated engines, cars, roundhouses, workshops and watertanks, and particularly a watertank, reservoir and pumphouse near said village of Warwick, O., on said line of railroad; that said watertank and pumphouse were maintained for the purpose of supplying water to locomotives operating on said line, and other purposes pertaining to the business of a common carrier engaged in interstate commerce. It became necessary for the plaintiff, in the performance of his duties in connection with the operation of said pumphouse, to ascertain the depth of the water in a cistern which was a part of the pumping station, and that, while attempting to inspect the same, he was injured by an explosion of gas which had accumulated in the cistern. The District Court for the Northern District of Ohio held in that case that the plaintiff at the time of the accident was engaged in interstate transportation or in work so closely related thereto as to be practically a part thereof, and, under the Federal Employers' Liability Act, was

entitled to recover damages which he had sustained as the result of the defendant's negligence.

In *Philadelphia, Baltimore & Washington R. R. Co.* v. *Smith* (*supra*) the United States Supreme Court held that an employee of an interstate railroad whose duty it was to cook the meals, make the beds and keep clean a camp car used by a gang of bridge carpenters, the car being provided and moved from place to place along the railroad line to facilitate the work of repairing bridges thereon, and who, at the time of his injury, was within the car on a sidetrack and occupied in getting a meal for the carpenters and himself while they were repairing one of the bridges in the vicinity, was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. The decision in the last-mentioned case was as late as May 19, 1919. In that case Mr. Justice PITNEY delivered the opinion of the court. In the opinion the court suggested that, while the relation of plaintiff's work to the interstate commerce of his employer would seem to be rather remote, upon closer examination of the facts the contrary appeared. Upon the assumption that by the decision of the Supreme Court in *Pedersen* v. *D., L. & W. R. R.* (*supra*) it was settled that the repair of bridges for use as instrumentalities for interstate commerce was so closely related to such commerce as to be in practice and in legal contemplation a part of it, and that the work of the bridge carpenters was so closely related to defendant's interstate commerce as to be in effect a part of it, the court, conceding that had the plaintiff acted only as cook and camp cleaner or attendant for the personal convenience of the bridge carpenters, and without regard to the conduct of their work, he could not properly have been deemed in any sense a participant in their work, held that the fact that he was employed in the camp car, which belonged to the railroad company and which was moved about from place to place along its line according to the exigencies of the work of the bridge carpenters with the object and necessary effect of forwarding their work by permitting them to conduct it conveniently at points removed from their homes and remote from towns where proper board and lodging were to be had, rendered the plaintiff a participant in such work, and, therefore, engaged in work so closely related to interstate commerce as to be a part of such commerce.

The case of *Erie R. R. Co.* v. *Collins* (253 U. S. 77), it seems to me, is abundant authority in support of the contention that the plaintiff's intestate at the time of his decease was engaged in interstate commerce within the provisions of the Federal Employers' Liability Act. The *Collins* case was decided May 17, 1920. The

plaintiff in that case was employed by the Erie Railroad Company, which was engaged in both interstate and intrastate commerce. His duties were to attend to a signal tower and switches, and also, in a nearby building, to run a gasoline engine to pump water into a tank for use in the locomotives, whether operating on intrastate or interstate trains. While engaged in the latter employment he was injured as the result of an explosion of gasoline. The opinion of the Supreme Court in the *Collins* case was delivered by Mr. Justice McKenna, in the course of which the learned justice collated and reviewed the leading recent decisions upon the subject, and finally announced the judgment of the court that the work in which Collins was engaged, both in the signal tower, signaling the approach and departure of trains, both interstate and intrastate, and in the pumping station, was so closely connected with the interstate commerce in which the defendant was engaged as to become a part of it.

In *Erie R. R. Co.* v. *Szary (supra)*, which was decided by the Supreme Court on the same day as the *Collins* case, that court held that where an employee of a railroad engaged in both interstate and intrastate commerce, whose duty it was to dry sand in stoves in a small structure near the tracks and supply it to locomotives, whether operating in one kind of commerce or the other, was injured while returning from an ashpit where he had gone to dump ashes taken by him from one of the stoves so used, he was employed in interstate commerce within the meaning of the Federal Employers' Liability Act.

Under the authority of the Federal decisions which I have mentioned, I think there can be no doubt but that the plaintiff's intestate, Hiser, who, at the time of his injury was engaged in lowering an old smokestack carrying smoke from boilers used in heating water for use by the defendant's ferryboats engaged in interstate traffic and in heating, during a part of the year, at least, the ferryhouse of the defendant used by it in connection with such interstate traffic, said smokestack being a necessary part of the defendant's equipment, was himself engaged in interstate commerce or in an act so closely related thereto as to be a part thereof.

The appellant cites many authorities in support of its contention that plaintiff's intestate was not, at the time he was killed, engaged in interstate commerce, notably, *Delaware, Lackawanna & Western R. R.* v. *Yurkonis* (238 U. S. 439); *Shanks* v. *D., L. & W. R. R.* (239 id. 556); *Buynofsky* v. *Lehigh Valley R. R. Co.* (228 N. Y. 249); *Vollmers* v. *N. Y. C. R. R. Co.* (223 id. 571).

It seems to me that, aside from the fact that the determination

of the case at bar must be governed by the more recent Federal decisions upon the subject, the cases cited by the appellant are distinguishable from the case at bar. In the first of said cases upon which the appellant relies, Yurkonis, an employee in defendant's colliery in Luzerne county, Pennsylvania, was engaged in preparing to set off a charge of dynamite for the purpose of blasting coal, and received injuries in connection with such operation for which he sued to recover under the Federal Employers' Liability Act. The defendant was the owner of the mine and prepared anthracite coal there for use in its locomotives engaged in both interstate and intrastate commerce. The Supreme Court held that notwithstanding these circumstances, Yurkonis was not engaged, when mining coal to be used at some future day by the railroad company, in interstate commerce. Clearly, the situation in the *Yurkonis* case was far more remote than that of plaintiff's intestate in the case at bar.

In *Shanks* v. *D., L. & W. R. R.* (*supra*) the defendant was engaged in both interstate and intrastate transportation. It conducted a machine shop for the repair of locomotives used in such transportation. It was held in that case that the plaintiff was not engaged in interstate commerce while taking down and putting up fixtures in such machine shop, and could not maintain an action for injuries sustained while so employed under the Federal Employers' Liability Act. Mr. Justice VAN DEVANTER delivered the opinion of the Supreme Court in that case, in the course of which he said: " * * * it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the *Yurkonis Case,* was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers' Liability Act."

The excerpt from the opinion of Mr. Justice VAN DEVANTER above quoted clearly distinguishes the *Shanks* case and the case then under review from the case at bar. The steam boiler and smokestack upon which Hiser was at work was not remotely but directly connected with the interstate operations of the defendant,

and was a necessary part of its equipment required to carry on the same.

In *Buynofsky* v. *Lehigh Valley R. R. Co.* the circumstances under which plaintiff was injured were still more remote from interstate commerce carried on by the defendant railroad company. Plaintiff there was injured while engaged in a sawmill maintained and operated by the defendant in cutting up timber and logs in making crossties. It did not appear that at the time plaintiff was injured the ties being manufactured were for any particular track or place, but were intended for use generally at some future day. The court held that the purposes for which the crossties were intended were so indefinite and uncertain that there was no immediate connection between the work of the plaintiff and interstate commerce. I do not think the last-mentioned case at all controlling against the respondent in the case at bar.

In *Vollmers* v. *N. Y. C. R. R. Co.* (223 N. Y. 571) the Court of Appeals reversed the Appellate Division, Third Department (180 App. Div. 60), which held that a plumber employed in the maintenance of ways department of the New York Central Railroad Company for a period of years, whose duties required him to be in and about the railroad properties generally, was engaged in interstate commerce when run over and killed while he was crossing the tracks in front of a station in which he had been working. The reversal of the Court of Appeals was upon the authority of *Shanks* v. *D., L. & W. R. R.* (239 U. S. 556), and *Gallagher* v. *N. Y. C. R. R. Co.* (180 App. Div. 88; affd., 222 N. Y. 649). In the *Gallagher* case a carpenter in the general employ of a domestic railroad company, who, at the time of his death, was repairing coal-pockets from which coal was used from time to time for locomotives engaged in interstate or intrastate commerce, was held not engaged in repairing an instrumentality of interstate commerce so as to render the Workmen's Compensation Law inapplicable. As in the *Shanks* case, the circumstances involved in the *Gallagher* case were far more remote than those in the case at bar.

While, as before suggested, there is some confusion in the decisions of the courts, State and Federal, upon this subject, still, I think, by a great weight of authority and under the most recent decisions of the Federal courts, we must hold that plaintiff's intestate, at the time he was killed, was engaged in interstate commerce.

Upon the trial the court limited the recovery to compensation to Lavinnie Ruth Hiser, the infant child of the parties. Such limitation arose from the following facts: Hiser, plaintiff's intestate, and plaintiff were ceremonially married at a church at White

Plains road and Two Hundred and Twenty-fifth street, New York city, on February 2, 1918, and Lavinnie Ruth Hiser, the only child of such marriage, was born to the plaintiff and to the intestate on February 10, 1919. Prior to her marriage to the intestate, plaintiff had been the wife of one Edmund L. Burke, and two children were born of such marriage. That marriage occurred October 2, 1915, and Burke left plaintiff the following September. In the fall of 1917 plaintiff heard that Burke was in the army in Georgia, and in January, 1918, Burke's brother told the plaintiff that her husband was dead. This she believed, and she told Hiser that her former husband was dead. Thereupon, a month or so later, Hiser and the plaintiff were married. Burke subsequently returned and brought action against the plaintiff and obtained an interlocutory decree of divorce on July 15, 1919, which became final after the death of Hiser. (See Code Civ. Proc. § 1774, as amd. by Laws of 1905, chap. 537, and Laws of 1919, chap. 277.) Hiser also brought an action for the annulment of his marriage with the plaintiff, and on May 27, 1919, an interlocutory decree was entered annulling said marriage and final judgment therein was entered September 26, 1919. Upon the presentation of the evidence in the annulment action, Hiser testified, as a witness in his own behalf, that the child of the parties, Lavinnie Ruth, was born February 10, 1919, and that he desired the custody of such child of his marriage with the plaintiff. The decree of annulment was granted, but the decision contained no finding as to the good faith of the parties in contracting the marriage, and the decree made no provision with respect to the legitimacy of the child based upon such good faith. Subsequently, however, and on March 2, 1920, after the death of plaintiff's intestate, on application made to the court, the proceedings in the annulment action were amended so as to add to the decision an additional finding of fact and a conclusion of law to the effect that the marriage between Hiser and the plaintiff was contracted in good faith, and that both Hiser and the plaintiff, at the time of contracting such marriage, believed that plaintiff's former husband was dead, and to the effect that Lavinnie Ruth Hiser was the legitimate child of the decedent, Lawrence R. Hiser, and Mabel Hiser, the plaintiff, and by the same order the interlocutory judgment was amended accordingly; and on March 16, 1920, an order was entered amending the final judgment in said action so as to contain the adjudication that the said marriage contracted by the plaintiff and said Hiser was contracted by both of said parties in good faith, both believing that the former husband of the plaintiff was dead, and adjudging and decreeing that said Lavinnie Ruth Hiser was the legitimate child and

daughter of the parties. The statute then in effect (Code Civ. Proc. § 1749, subd. 6, as amd. by Laws of 1919, chap. 202) provided that, if a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appeared, and the judgment determined, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and in the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage should be deemed the legitimate child of the parent who at the time of the marriage was competent to contract. When the interlocutory judgment was entered in the annulment action, substantially the same statutory provision existed as part of section 1745 of the Code of Civil Procedure (as amd. by Laws of 1913, chap. 444), and it continued therein until re-enacted and amended in 1919 as a part of section 1749 of the Code, which took effect September 1, 1919. The evidence clearly shows that at the time this marriage was contracted the plaintiff had been informed by her former husband's brother that she was a widow and that her former husband was dead. She testifies that she believed such to be the fact, and she informed Hiser that such was the fact, and he believed the same to be true. I think, therefore, that, under such circumstances, the court very properly amended the annulment decree so as to legitimatize the child of such marriage. (*Gennert* v. *Butterick Publishing Co., Inc.*, 133 App. Div. 86; *Bohlen* v. *M. E. R. Co.*, 121 N. Y. 546.) In any event, the decree stands unassailed, and I do not think it susceptible to collateral attack by the appellant upon this appeal. The plaintiff was not only appointed administratrix of her deceased husband, with whom, by the way, she was living at the time of his death under an agreement with him to live together as husband and wife, but she was appointed general guardian of her infant child, Lavinnie Ruth Hiser. The court very properly protected this child in her rights, as her parents, under the circumstances of the case, unquestionably married in the full belief of their legal right to contract such alliance. (*Baylis* v. *Baylis*, 146 App. Div. 517; *Earle* v. *Earle*, 141 id. 611, 615.)

The judgment and order appealed from should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Judgment and order affirmed, with costs.